FILED '10 FEB 08 10:52 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GARY LYNN BONNER,

   Plaintiff,

   v.

UNION PACIFIC FLEXIBLE PROGRAM,
(the "Plan"); UNION PACIFIC
CORPORATION, the Plan sponsor: All
Fiduciaries of the "Plan"; and the
Administrator of the "Plan",

   Defendants.

CV 09-364-SU

FINDINGS AND RECOMMENDATION

Sullivan, Magistrate Judge,

  Gary Lynn Bonner filed a Complaint, *pro se*, against Union Pacific Corporation ("UPC"),

Union Pacific Flexible Benefits Program, the Plan Sponsor, all fiduciaries of the Plan and the

administrator of the Plan (collectively "Plan"). Plaintiff alleges he is entitled to relief under the

Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et. seq. ("ERISA").

Page 1 - FINDINGS AND RECOMMENDATION

Specifically, he alleges that defendants violated fiduciary duties owed to him under ERISA and interfered with his rights under ERISA. Plaintiff also alleges violations of Oregon insurance statutes as a result of defendants' alleged unfair claims practices. Plaintiff seeks declaratory and injunctive relief, disability payments, including prejudgment and post-judgment interest, attorney fees and costs. Plaintiff also asks the court to order a criminal investigation of defendants for the alleged violations of ERISA.

Defendants deny that plaintiff is entitled to any benefits as a participant of the Plan or under ERISA. Defendants argue that plaintiff's claims are barred by *res judicata*, waiver and release, and statute of limitations. Defendants also raise ERISA preemption as a defense to plaintiff's Oregon insurance claim. Defendants filed Counterclaims seeking an injunction imposing pre-filing restrictions on any further claims filed by plaintiff against defendants arising out of his employment with UPRR due to the allegedly vexatious nature of plaintiff's present Complaint. Defendants also seek judgment for damages, legal fees, expenses and costs for breach of a release between plaintiff and his former employer Union Pacific Railroad.

Defendants filed a Motion for Summary Judgment in their favor as to all claims and counterclaims in this case. For the reasons stated below, defendants' motion for summary judgment should be granted, in part, and denied, in part.

*Background*

Plaintiff is an Idaho resident who was employed as a manager by UPRR until August 31, 2000, when his employment was involuntarily terminated. Plaintiff was a participant in the Plan as an employee of UPRR.

Page 2 - FINDINGS AND RECOMMENDATION

UPC is a Utah corporation with its principal place of business in Nebraska. UPC is the parent corporation of UPRR and sponsor of the Plan. The Plan provides for both Short Term Disability benefits ("STD") and Long Term Disability benefits ("LTD") to employees of UPRR.

On January 27, 1993, plaintiff lost the sight in his right eye. Plaintiff alleges that the loss was related to his employment, and occurred while he was working in Oregon for UPRR. (Compl. ¶¶ 19, 20). Plaintiff claims that he was disabled as a result the loss of vision in his right eye, and that he is now entitled to LTD from defendants.[1]

In July, 2000, plaintiff applied for and received STD based upon disability for his "seriously depressed and physically unhealthy condition . . . ." ( Brian D. Black Decl. ("Black Am. Answer Decl.") Ex. F., July 6, 2009 .) Plaintiff applied for disability from the United States Railroad Retirement Board ("RRB") beginning July 5, 2000, "for their portion of [plaintiff's] disability, for the loss of [plaintiff's] eye and for mental and emotional breakdown." (Compl. ¶ 46; Robert E. Coggins Decl. Ex. R., Oct. 26, 2009.) In August, 2000, plaintiff's employment with UPRR was terminated for inappropriate behavior regarding another employee. His termination was unrelated to his application or receipt of disability benefits.[2] On August 21, 2000, UPRR notified plaintiff, by letter, that his employment would be terminated effective August 31, 2000, and that "Coverage under

---

[1]There is some discussion by the parties of an injury to plaintiff's left eye. It is unclear whether reference to plaintiff's left eye occurred by mistake or design. Nevertheless, the references to his left eye are not relevant to the decision here.

[2] The facts regarding Bonner's termination are explained in detail in Magistrate Judge Williams' Order in *Bonner v. Union Pacific Railroad,* CV 02-169-S-MHW (D. Idaho, August 22, 2003) (*Bonner II*) and need not be repeated here. (Brian D. Black Decl. ("Black Answer Decl.") Ex. B., June 15, 2009.)

all Company benefits programs will cease on August 31, 2000." (Gary L. Bonner Aff. Ex. 24, Oct. 6, 2009.)

After plaintiff's STD benefits ended, he appealed the termination of benefits to Barbara Schaefer, Senior Vice President of Human Resources for UPRR, claiming disability for both loss of his eye and mental disorders. (Coggins Decl. Ex. A.) UPRR responded with a letter explaining that coverage under all Company benefits programs ceased upon termination of employment. (Coggins Decl. Ex. C.) On August 28, 2001, plaintiff was notified that he was to receive a Railroad Retirement disability annuity with an onset date of July 4, 2000. (Coggins Decl. Ex. M.) Based upon the RRB award, plaintiff again applied to UPRR for disability benefits, which were again denied. (Coggins Decl. Ex. F at 3.) Plaintiff filed a Complaint against UPRR in the District Court of Idaho alleging denial of his rights under ERISA. (Black Am. Answer Decl. Ex. F.)

From at least 1996, until this lawsuit was filed in the District Court of Oregon, plaintiff has filed numerous lawsuits[3] regarding claims arising out of his employment with UPRR, including:

1.     *Bonner v. Union Pacific Railroad Co.*, No. CIV 96-0043-SC-EJL (D. Idaho January 26, 1996) (*"Bonner I"*) (Brian D. Black Decl. ("Black Summ. J. Decl.") Ex. A, Sept. 9 2009);

2.     *Bonner v. Union Pacific Railroad Co.*, No. 1:02-CV-169 (D. Idaho 2002) (*"Bonner II"*) (Black Am. Answer Decl. Ex. F);  affirmed by *Bonner v. Union Pacific*, 132 Fed. Appx. 110 (9th Cir. 2005)(*"Bonner VII"*) (Black Am. Answer Decl. Ex. C);

3.     *Bonner v. Union Pacific Railroad Co.*, No. 1:02-CV-170 (D. Idaho 2002) (*"Bonner III"*) (Black Am. Answer Decl. Ex. G);

4.     *Bonner v. Hardesty*, No. CV 2002-4243 (Idaho Third District Court, Canyon County,

---

[3]The case numbers and dates for the various lawsuits was provided by the parties.

Page 4 - FINDINGS AND RECOMMENDATION

2002) (*"Bonner IV"*) (Pl.'s Answer ¶ 153);

    5.    *Bonner v. Alderson*, No. CV02-248-S-LMB (D. Idaho June 6, 2002) (*"Bonner V"*) (Black Am. Answer Decl. Ex. H); and

    6.    *Bonner v. Union Pacific Railroad Co.*, No. 03-CV-134-MHW (D. Idaho April 2, 2003) (*"Bonner VI"*) (Black Am. Answer Decl. Ex. I).

    On September 11, 2006, plaintiff entered into a Mutual Global Release of All Claims ("Release") with UPRR. The recitals in the Release included specific mention of each lawsuit as listed above. Recital "g." also included the following: "Prior to and since termination of his employment, [plaintiff] has applied for certain benefits. Union Pacific ceased payment of any benefits to [plaintiff] upon termination of [plaintiff's] employment, and has denied all applications or claims for benefits by [plaintiff] since [plaintiff's] termination." (Black Am. Answer Decl. Ex. A. at 1.)

    In January 2007, plaintiff again submitted a claim for disability benefits for loss of his eye stating that he had never previously submitted a claim for disability based on the loss of eyesight. His claim was denied based upon the Release he had signed with UPRR.[4] Plaintiff appealed this denial arguing that he had not released his claim for disability benefits from the Plan sponsored by UPC. Plaintiff stated that he had only released UPRR for damages from injuries. (J.D. Sullivan Decl. Ex. H, I, J, K, Sept. 9, 2009.) UPC, writing on behalf of the Plan Administrator, denied plaintiff's appeal, indicated that it would raise any defenses it had including the statute of limitations, and stated "You have the right to bring a civil action under ERISA section 502(a) challenging the

---

[4] Plaintiff's claim was denied by Contra Integrated Services, a third party that processes claims on behalf of UPC. An appeal was made to Union Pacific HR Benefits and, subsequently, denied by the Administrator of the Plan. (Sullivan Decl. Ex. I- L.)

denial of your claim." (Sullivan Decl. Ex. L.)  Some of the events that resulted in the problems

plaintiff suffered with his eye occurred in Oregon thus plaintiff has filed in this court.


*Discussion*

I.    Standard of Review

    A.    Summary Judgment

       Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials

on file, and any affidavits show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." FED R. CIV. P. 56(c).  All material facts

are resolved in light most favorable to nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331

(1986).  The moving party bears the initial burden of showing no genuine dispute of material fact

exists. *Id.* at 323.

    B.    ERISA

       This court has jurisdiction of ERISA claims under 29 U.S.C. § 1132.  A civil action under

ERISA may be brought by a "participant" in or "beneficiary" of an ERISA plan.  29 U.S.C. §

1132(a)(1).  ERISA defines "participant," in relevant part, as "any. . . former employee . . . who is

or may become eligible to receive a benefit of any type from an employee benefit plan . . . ." 29

U.S.C. § 1002(7).[5] "In order to establish that he . . . 'may become eligible' for benefits, a claimant

must have a colorable claim that (1) he . . . will prevail in a suit for benefits, or that (2) eligibility

requirements will be fulfilled in the future." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101,

---

    [5] Plaintiff is not a "beneficiary" as defined by the statute, i.e., "a person designated by a
participant, or by the terms of an employee benefit plan, who is or may become entitled to a
benefit thereunder."  29 U.S.C. § 1002(8).

117-18 (1989); *see also Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1038 (9th Cir. 2006).

    C.    Preemption.

       ERISA remedies, as provided by 29 U.S.C.A. § 1132(a), set forth a comprehensive civil

enforcement scheme for participants and beneficiaries of an ERISA plan. *Aetna Health v. Davila*,

542 U.S. 200, 208-09 (2004).  Any state law cause of action that duplicates, supplements, or

supplants the ERISA civil enforcement remedy provided by section 1132(a) conflicts with the clear

congressional intent to make the ERISA remedy exclusive and is therefore preempted. *Id.*

II.    Defendants' Affirmative Defenses to Plaintiff's Claims

    A.    Claim Preclusion

       Defendants contend that plaintiff's claims are barred by claim preclusion[6] based upon the

prior Idaho case filed against UPRR alleging ERISA violations (*Bonner II*).  Under the doctrine of

claim preclusion, "a judgment on the merits in a prior suit bars a second suit involving the same

parties or their privies based on the same cause of action." *Tahoe-Sierra Preservation Council v.*

*Tahoe Regional Planning Agency,* 322 F.3d 1064 (9th Cir. 2003) (quoting *Parklane Hosiery Co.*

*v. Shore*, 439 U.S. 322, 327 n. 5 (1979)); *accord Acumed LLC v. Stryker Corporation*, 525 F.3d

1319, 1323 (Fed. Cir. 2008).  A claim is also precluded if the claim could have been asserted in the

prior litigation. *Tahoe-Sierra Preservation Council*, 322 F.3d at 1077.  Under Ninth Circuit law,

claim preclusion applies where there is:  (1) an identity of claims; (2) a final judgment on the merits;

and (3) privity between the parties. *Id.*  The court will consider each of these factors to determine

whether claim preclusion bars plaintiff's claims here.

---

     [6] The doctrine of *res judicata* includes both claim preclusion and issue preclusion. *U.S. v. Oregon*, 470 F.3d 809, 817 (9th Cir. 2006).

1.    Identity of Claims

In the instant case, plaintiff alleges that he began communicating with the Plan in the 1990's after he lost vision in his eye and that despite these communications, defendants did not acknowledge his alleged claims for disability. (Compl. ¶¶ 29, 42.) Plaintiff acknowledges that he continued working and that he requested disability on July 4, 2000, and was granted STD for mental and emotional breakdown. He further admits that the medical documents received from his physicians "included evidence as proof of disability for the loss of vision." (Compl. ¶ 45.) Plaintiff also admits that he was "unsuccessful in a lawsuit to overturn the Plan Administrator's decision to terminate [his disability] benefits . . . ." (Compl. ¶ 49.) Plaintiff alleges that "since the Plan had never acknowledged, acted on, or addressed [his] disability for his lost eye . . . ." he submitted another claim, the denial of which is the basis for the instant suit. This most recent claim was specifically denied because plaintiff had signed a Release of claims. (Compl. ¶¶ 56, 57.) Plaintiff filed this suit alleging violations of ERISA, and seeking to restore benefits under ERISA. (Compl. ¶¶ 69, 76, 85.)

In *Bonner II*, plaintiff alleged, in part:

8.    In January 1993, the Plaintiff was disabled and permanently lost the vision in his right eye from "central [serous] choroidopathy". Dr. Harf diagnosed the condition [as] having been caused by mental and physical stress due to Defendant's requirement of additional an excessive stressful job responsibilities and additional an excessive hours of work for the Defendant.

9.    Prior to these injuries, Plaintiff was a strong able-bodied man, and a skilled trainman. Dr. Harf warned Plaintiff that if he continued to work like this he could loose the vision in the other eye. The Plaintiff reported the injury to the Defendant with the expectation that an accommodation on his job would be made to prevent further injury. The Plaintiff continued to work because he trusted that the Defendant would protect his safety and health, if he followed the rules and instructions, as he had been assured every day that he worked.

10.    The plaintiff could not quit the management job with the Defendant and go back to

his skill on a Trainman's job, because his eye injury disabled him from safely working as a Trainman with a railroad company.

(Coggins Decl. Ex. D ¶¶ 8-10.)

In this case plaintiff alleges, in part:

5.      Before filing this action, Plaintiff notified the Plan and its various representatives that he was demanding his disability benefits for the loss of vision in his right eye. Defendants have failed to provide these benefits to the Plaintiff.

        . . . .

19.     On or about January 21 to 23, 1993, under the instructions of his Superintendent, Bonner worked 48 straight hours for his railroad employer between Ontario, Oregon and Huntington, Oregon because there were no managers to relieve him. Bonner's duties during this 48 hour shift were covered by Federal Statutes 49 CFR 228.5, 49 CFR 228.7 and 49 USC Sec. 21105 which required that any railroad employee performing these duties must have 8 hours rest every 16 hours. Bonner was not given any required rest period during his 48 hour shift.

20.     On January 27, 1993[,] Bonner woke up with impaired vision in his right eye. He immediately went to his eye doctor, Peter Jensen, who said there was fluid leaking into his eye; he was referred him to another eye surgeon, Dr. Leo Harf, who diagnosed him with "central [serous] choroidopathy" and performed emergency laser surgery. After the surgery Dr. Harf informed Bonner he had permanently lost the vision in his right eye. Doctors' Ryan McKinnon and Dr. Daniel L. Tiller have reconfirmed the permanent loss of vision in Bonner's right eye.

21.     Upon information and belief, loss of vision in one eye was and is a permanently disabling condition for railroad operating department employees, under Bonner's insurance Plan and under the U.S. Railroad Retirement Board disability coverage, which both have the same criteria for the disability of an operating department railroad employee.

22.     Prior to these injuries, Bonner was a strong and able-bodied man, and a skilled railroad operating department manager and employee for 25 years. Dr. Harf warned Bonner that if he continued to work in his job he could loose the vision in the other eye.

23.     Dr. Ryan McKinnon, MD has certified that with the loss of vision in his right eye

Page 9 - FINDINGS AND RECOMMENDATION

Bonner was and is unable to meet the required Federal standards for his railroad occupations.

(Compl. ¶¶ 5, 19-23.)

The court finds that plaintiff's vision loss claim here involves that same claim he alleged in *Bonner II*. Here, as in *Bonner II*, plaintiff seeks relief for an on-the-job eye injury he incurred in January 1993, that resulted in central serous choroidopathy. His claims are sufficiently related to satisfy the first prong of claim preclusion. *See, e.g., Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992) ("Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together."); *accord Tahoe Sierra*, 322 F.3d at 1078.

       2.     Judgment on the Merits

Plaintiff contends that *Bonner II* did not adjudicate his claim under ERISA for disability based on the loss of his eye. Rather, plaintiff contends that his claim in *Bonner II* was for disability based only on his mental disorder. In *Bonner II*, Magistrate Judge Williams wrote a thirty-three page Order denying plaintiff's motion for summary judgment and granting UPRR's motion for summary judgment. Judge Williams set forth a thorough and exhaustive review of the record and specifically addressed "Union Pacific's denial of disability benefits under the Plan. . . ." applying the ERISA standard of review.[7]  (Black Am. Answer Decl. Ex. B at 8.)  Although Judge Williams did not expressly mention the reason plaintiff began receiving STD benefits in July 2000, plaintiff's

--------------------------------------------------

[7]The ERISA standard of review was the subject of a recent 9th Circuit decision. *See Abatie v. Alta Health & Life Insurance Company*, 458 F.3d 955 (9th Cir. 2006). Judge Williams' review of any potential conflict of interest by the Plan Administrator was throughly considered and discussed in his Order.

Page 10 - FINDINGS AND RECOMMENDATION

Complaint in *Bonner II* stated that "[p]laintiff was disabled and permanently lost vision in his right eye . . . ." (Black Am. Answer Decl. Ex. F at ¶8.) After a thorough review of the record, Judge Williams concluded that "Schaefer's [Plan Administrator] decision [to terminate plaintiff's benefits] was consistent with Plan language." (Black Am. Answer Decl. Ex. B at 14.) Further, Judge Williams determined that the Plan Administrator's interpretation of when coverage under all Union Pacific's benefits programs ceased was reasonable, and that "her decision to deny Plaintiff's claims for benefits was fully explained and in accordance with the Plan language." (Black Am. Answer Decl. Ex. B at 16-17.) Finally, Judge Williams concluded that plaintiff's STD benefits were terminated and that he was not entitled to LTD benefits under the Plan, and that Union Pacific had not violated ERISA, 29 U.S.C. § 1140, when it terminated his benefits. (Black Am. Answer Decl. Ex. B at 19.)

Despite plaintiff's contentions to the contrary, his STD and LTD benefits under the Plan were terminated when his employment with UPRR was terminated. Judge Williams found that the Plan Administrator's interpretation of coverage under the Plan was reasonable and there had been no violation of ERISA. Thus, entitlement to disability benefits, whether STD or LTD, under the Plan and liability under ERISA was adjudicated in *Bonner II* and affirmed by the Ninth Circuit. *See Bonner v. Union Pacific*, 132 Fed. Appx. 110 (9th Cir. 2005). The court finds that *Bonner II* was terminated on the merits when the Ninth Circuit affirmed the Idaho District Court's Order granting UPRR's motion for summary judgment. *See Bonner*, 132 Fed. Appx. 110 (affirming district court's decision upholding the Plan Administrator's decision denying both STD and LTD benefits, and denying Bonner's request for statutory penalties and vacation pay). Plaintiff's attempt now to revive a claim that was both related in time and origin to his earlier lawsuit regarding denial of disability

benefits in 2001 cannot succeed.[8]  The second prong of claim preclusion has been satisfied.

      3.      Privity Between the Parties

      Plaintiff contends that the parties in *Bonner II* were different; namely, that he did not sue the Plan and UPC in the prior case. Rather, plaintiff's Complaint in *Bonner II* was filed only against his former employer UPRR.  Plaintiff's claims here are brought against the Plan (including Plan Administrator) and UPC, the Plan's sponsor.[9]  The question for purposes of claim preclusion is whether there is privity between the Plan (including the Plan Administrator), UPC and UPRR such that the claims brought in *Bonner II* against UPRR preclude the current claims brought against the Plan and UPC.

      The facts reveal that Barbara Schaefer, Senior Vice President of Human Resources for UPC, was the Plan Administrator when plaintiff's disability benefits were denied in 2001. UPRR is and was a wholly owned subsidiary of UPC, sponsor of the Plan.  UPC offered, at all pertinent times STD and LTD,  to employees of UPRR.  UPC is the Plan's funding source and its employee, Schaefer, served as the Plan Administrator.[10]  UPRR and defendants in the present action are closely related.  Indeed, Bonner is seeking to hold the present defendants liable for the same claims he

---

     [8] Plaintiff's receipt of a letter denying his claim and advising him of his right to sue under ERISA does not change this conclusion.  ERISA requires such advice as a function of claims procedures.  *See* 29 C.F.R. § 2560.503-1.  Plaintiff received  a similar letter in July, 2006, from a representative of the Plan Administrator denying another of plaintiff's appeals for benefits. There is no record that plaintiff filed suit under ERISA section 502(b) for those claims.  (Sullivan Decl. Ex. G at 2.)

     [9] The proper defendants in an ERISA action are the plan itself and the plan administrator. 29 U.S.C. ¶ 1002(21)(A).

     [10] It is not clear that Schaefer is still Plan Administrator but plaintiff's instant claim was denied on behalf of the Plan Administrator and the corporate relationships are the same. (Sullivan Decl. Ex. L.)

Page 12 - FINDINGS AND RECOMMENDATION

alleged in *Bonner II*, i.e., termination of benefits in violation of ERISA.  UPRR defended against Bonner's claims in *Bonner II*, in part, by providing an affidavit from the Plan Administrator. (Black Am. Answer Decl. Ex. B at 9,15.)  In fact, Judge Williams repeatedly referred to Schaefer's decision regarding Bonner's claim for disability benefits.

While plaintiff did not name the Plan and UPC, the Plan sponsor, in his prior suit, Judge Williams' decision in *Bonner II* addressed the Plan Administrator's interpretation of coverage under the Plan and found it was "fully explained and in accordance with Plan language . . . . [and] reasonable."  (Black Am. Answer Decl. Ex. B at 16-17.)  Judge Williams' Order found the interpretation of the Plan Administrator was conclusive regarding plaintiff's claims for disability benefits even though it was UPRR, plaintiff's employer, who had been named in the lawsuit. Plaintiff now argues that the parties are not identical and his disability claims were not adjudicated against the Plan and UPC in the first suit.

*Res judicata* principles do not always require one to have been a party to a judgment in order to be bound by it.  *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996).  Claim preclusion can apply if there is "substantial identity", i.e., commonality of interest between parties, the nonparty in the prior suit "had a significant interest and participated in the prior action," and the interest of the nonparty and party are so closely aligned as to be "virtually representative." *Tahoe-Sierra*, 322 F.3d at 1081.  The issue is one of substance rather than the names in the caption of the case.  *Id.* at 1082.

Under the circumstances here, where the party seeking to avoid claim preclusion is plaintiff in the prior action and the source of the error in naming an incorrect party, the court finds privity between the parties such that the third prong of claim preclusion is satisfied.  *See Adams v. IBM Personal Pension Plan*, No. 07 Civ. 6984 (JSR), 2008 WL 344699, at *2 (S.D.N.Y. Feb. 5, 2008)

Page 13 - FINDINGS AND RECOMMENDATION

(finding pension plan and plan administrator to be in privity with corporate sponsor named as defendant in prior action where plaintiff sought "to hold the present defendants liable for the same misconduct he alleged in the first action"); *see also Guiles v. Metropolitan Life Insurance Co.*, No. Civ. A. 00-5029, 2001 WL 1454041, at *2 n.3 (E.D. Pa. 2001) ("If the benefit plan is provided by the employer and is internal to the employer, [then] that fact would create the close or particular relationship with the party in the original action that would satisfy the second *res judicata* element.").

Defendants have established each of the three required elements for claim preclusion and, therefore, plaintiff's claim for disability benefits is barred by *res judicata*. Accordingly, defendants request for summary judgment on this ground should be granted.

B.    Statute of Limitations.

Alternatively, defendants contend that the statute of limitations bars plaintiff's ERISA claims. Plaintiff counters that the statute of limitations could not have run on his disability claim based on the loss of his eye because UPRR never recognized this disability.

There is no specific statute of limitations governing claims for benefits under an ERISA plan. Therefore, the length of the limitations period is determined by looking to the analogous state statute of limitations. *Wetzel v. Lou Ehlers Cadillac*, 222 F.3d 643, 646 (9th Cir. 2000). The most analogous state statute of limitations for an ERISA case brought in Oregon is Oregon's six-year statute of limitations for breach of contract. *See Chuck*, 455 F.3d at 1031; *see also* Or. Rev. Stat. § 12.080(1). An ERISA cause of action accrues either at the time benefits are denied or when plaintiff has reason to know the claim has been denied. *Chuck*, 455 F.3d at 1031.

Here plaintiff had reason to know his claim for disability, including a claim based upon the

Page 14 - FINDINGS AND RECOMMENDATION

loss of his eye, had been denied more than six years prior to filing this lawsuit. In his application for disability dated January 16, 2007, plaintiff stated his disability based on loss of vision in his right eye began in 1993 and that the company refused to grant him disability in 2000. (Pl.'s Opp'n Summ. J. Ex. 14.) Further, plaintiff's claim for disability benefits were denied by the Plan Administrator on December 13, 2001. Thus, plaintiff had reason to know on December 13, 2001, of the "clear and continuing repudiation" of his claim. *Chuck,* 455 F.3d at 1033; *Wetzel,* 222 F.3d at 649-50. Plaintiff filed his Complaint in this case on April 9, 2009, almost seven and a half years after the denial of his claim and over one year beyond the relevant limitations period. Accordingly, plaintiff's claim for disability benefits is barred by the statute of limitations and defendants' request for summary judgment on this ground should be granted.

### C.    Standing.

Defendants also insist that plaintiff is not a "participant" as defined by ERISA and, therefore, does not have standing to file this lawsuit. An ERISA plan participant is defined as "[a] former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . ." 29 U.S.C. § 1002(7). "[I]n order to establish that he . . . may become eligible for benefits, a claimant must have a colorable claim that (1) he . . . will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Firestone Tire & Rubber Co.,* 489 U.S. at 117-18 (citation and quotations omitted).[11] Whether a party is a "participant" is determined as of the time the lawsuit is filed. *Miller v. Rite Aid Corporation,* 504 F.3d 1102, 1106 (9th Cir. 2007). As set forth above, plaintiff's claims are barred by both the statute of limitations and claim

---

[11] Having been terminated by UPRR, it is unlikely plaintiff will become eligible for disability benefits in the future.

Page 15 - FINDINGS AND RECOMMENDATION

preclusion, thus, he did not have a colorable claim at the time he filed his Complaint. Accordingly, plaintiff was not a Plan "participant" as defined by section 1002(7) and he lacks standing to bring this lawsuit under ERISA. *Chuck,* 455 F.3d at 1039. Defendants' request for summary judgment against plaintiff's disability claim on the ground that he lacks standing to bring such a claim should be granted.

D.       Waiver and Release.

Plaintiff's claim for benefits was denied by the Plan Administrator based upon the Release executed by plaintiff and UPRR in 2006. Plaintiff contends that he did not intend to release the Plan or UPC from any ERISA claims.

The court has previously determined that plaintiff's claims are barred under the doctrine of *res judicata,* that they were filed beyond the limitations period, and that plaintiff lacks standing to bring ERISA claims. As such, the court need not reach plaintiff's contention that he never intended to release the Plan or UPC when he entered the Release.

E.       Preemption

Plaintiff brings a claim based upon a violation of Oregon's insurance law, specifically the Unfair Claim Settlement Practices Act. *See* Or. Rev. Stat. § 746.230. Oregon courts have determined that violations of this Act are not independently actionable. *Richardson v. Guardian Life Ins. Co. of Am.* 161 Or. App. 615, 623-24, 984 P.2d 917, 923 (1999); *Malbco Holdings, LLC v. AMCO Ins. Co.,* No. CV-08-585-ST, 2008 WL 5205202, *5, 8 (D. Or. Dec. 11, 2008). Rather, the purpose of section 746.230 is to prohibit certain enumerated claims settlement practices.

Even if plaintiff could allege a claim based upon state law, the civil enforcement provision of ERISA preempts any state claims that duplicate, supplement, or supplant the ERISA remedies as

Page 16 - FINDINGS AND RECOMMENDATION

provided for in 29 U.S.C. § 1132(a). *Aetna Health*, 542 U.S. at 209. Plaintiff's allegations regarding his state law claim are the same as for his alleged violations under ERISA and, therefore, are preempted. Accordingly, Defendants' motion for summary judgment against plaintiff's state law claim should be granted.

III.    Defendants' Counterclaims

    A.    Injunction

Defendants seek an injunction against plaintiff to prevent him from filing further cases against defendants based upon plaintiff's disability and/or his alleged claim to disability benefits. Defendants argue that because plaintiff is a vexatious litigant, they are entitled to a permanent injunction in order to prevent commencement of any further litigation between the parties without a pre-clearance process.

The Ninth Circuit recognizes "the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under appropriate circumstances." *De Long v. Hennessey*, 912 F.2d 1144, 1146 (9th Cir. 1990). A district court may enjoin a vexatious litigant under the All Writs Act, by issuing an order requiring the litigant to seek permission from the court prior to filing any future suits. 28 U.S.C. § 1651(a) ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.").

An order imposing pre-filing review conditions must meet the following requirements: (1) the party must have had adequate notice and an opportunity to oppose the order; (2) there must be an adequate record for review, including a list of all cases and motions that led the court to conclude that a vexatious litigant order was necessary; (3) the court must make a substantive finding as to the

Page 17 - FINDINGS AND RECOMMENDATION

frivolous or harassing nature of the litigant's actions; and (4) the order must be narrowly tailored to fit the particular problem involved. *De Long*, 912 F.2d at 1147-48. Such pre-filing orders are an extreme remedy and are rarely used. *Id*. A court should enter a pre-filing order constraining a litigant's scope of actions in future cases only after cautious review of the pertinent circumstances. *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007).

Plaintiff has had adequate notice and an opportunity to oppose the requested order. Defendants submitted a proposed order and both parties have briefed the issue. As presented above, the court has had an opportunity to review prior cases, motions, pleadings and orders. To decide whether a litigant's actions are frivolous or harassing, the court "must look at 'both the number and content of the filings as indicia' of the frivolousness of the litigant's claims." *De Long*, 912 F.2d at 1148 (quoting *In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988)) "An injunction cannot issue merely upon a showing of litigiousness. The plaintiff's claims must not only be numerous, but also be patently without merit." *Id*. (quoting *Moy v. United States*, 906 F.2d 467, 470 (9th Cir. 1990)).

While the court agrees that there has been protracted litigation involving these parties and many of the issues involved in this case, I do not recommend at this time that a vexatious litigation order be entered. Other litigation in Idaho, at times, involved different issues and parties. This is the second case that plaintiff has filed regarding his claim for long term disability. *Bonner II* resulted in a denial of plaintiff's short term and long term disability claims. Defendants contend that plaintiff's claims here are totally without merit based on the Release as well as various defenses set forth above. Plaintiff's interpretation of the facts and prior court orders, while creative, is not supported by the record. While the court has addressed the defenses on the merits and has recommended granting defendants' motion for summary judgment, Bonner's conduct is not

sufficiently frivolous or harassing at this time to require a vexatious litigation order. *See Molski*, 500 F.3d at 1060 (plaintiff had filed roughly 400 ADA cases); *Lundahl v. NAR, Inc.*, 434 F.Supp.2d 855 D. Idaho 2006) (plaintiff's prior claims dismissed as frivolous); *see also deParrie v. Vullo*, No. Civ. 00-1579-KI, 2001 WL 204839 (D. Or. Feb. 7, 2001). Defendants' request for a vexatious litigation order should be denied.

B.      Damages

Defendants counterclaims include allegations of breach of the Release and claims for compensatory damages, fees and other expenses. (First Am. Answer and Counterclaims, p. 44). Defendants did not present evidence nor any substantive argument on their claims for damages. For purposes of summary judgment, the court deems any issue regarding damages abandoned. *BankAmerica Pension Plan v. McMath*, 206 F.3d 821 (9th Cir. 2000) (A party cannot revisit theories it raises but abandons on summary judgment.)

Defendants' motion for summary judgment on the issue of damages should be denied.

## Conclusion

Based upon the foregoing, defendants' motion for summary judgment (doc. #32) should be Granted, in part, and Denied, in part.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due February 22, 2010. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings

and Recommendation will go under advisement.

DATED this 8th day of February 2010.

Patricia Sullivan
United States Magistrate Judge